## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FOOD52, INC.,[1] | Case No. 25-12277 (LSS) |
| Debtor. | **Ref Docket Nos. 15, 24, 50, 80, 85, 88, 133, 138, 158, 160, 165, 180, 185, 189, 195, 196 & 197** |

### ORDER AUTHORIZING (I) THE SALE OF THE DEBTOR'S SCHOOLHOUSE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) THE DEBTOR TO ENTER INTO AND PERFORM ITS OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT AND RELATED DOCUMENTS; (III) THE DEBTOR TO ASSUME AND ASSIGN CERTAIN CONTRACTS; (IV) WAIVER OF THE STAY PERIODS UNDER BANKRUPTCY RULES 6004(h) AND 6006(d); AND (V) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtor for the entry of an order (i) approving bidding procedures (the "**Bidding Procedures**"), substantially in the form attached as **Annex 1** to the Bidding Procedures Order (as defined below), to govern the marketing and sale of all or substantially all of the Debtor's assets (the "**Assets**"), and approving bid protections for the Stalking Horse Bidder in connection therewith; (ii) authorizing the Debtor to schedule an auction to sell the Assets (the "**Auction**") and scheduling the hearing to approve a sale of the Assets; (iii) approving the designation of the Stalking Horse Bidder and the Stalking Horse Bid; (iv) approving the form and manner of notice of the proposed sale transactions, the Bidding Procedures, the Auction, the Sale Hearing, and related dates and deadlines; (v) authorizing

---

[1]    The Debtor in this chapter 11 case is Food52, Inc. and the last four digits of the Debtor's federal tax identification number are 2738.  For the purpose of this chapter 11 case, the Debtor's service address is 1 Dock 72 Way, 13th Floor, Brooklyn, NY 11205.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion or the Asset Purchase Agreement (as defined below), as applicable.

procedures governing the assumption and assignment of certain executory contracts and unexpired leases to the prevailing bidder(s) acquiring the Assets (a "**Successful Bidder**"); and (iv) granting related relief; and this Court having entered on January 12, 2026, that certain *Order (I) Approving Bidding Procedures in Connection with the Sale of the Debtor's Assets; (II) Approving Form and Manner of Notice; (III) Approving Designation of Stalking Horse Bidder and Stalking Horse Bid; (IV) Scheduling Auction and Sale Hearing; (V) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases; and (VI) Granting Related Relief* [Docket No. 80] (the "**Bidding Procedures Order**"); and the Qualified Bid from Troy-CSL Lighting, Inc. (the "**Buyer**") having been selected as the highest or best offer for the Purchased Assets that are identified and defined in the *Asset Purchase Agreement* by and between the Debtor and the Buyer, attached hereto as **Exhibit A** (the "**Asset Purchase Agreement**"), at the conclusion of the Auction; and this Court having conducted a hearing on the Motion on February 10, 2026 (the "**Sale Hearing**") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and this Court having reviewed and considered the Motion, the Bidding Procedures Order, and the record of the hearing before this Court on January 12, 2026 (the "**Bidding Procedures Hearing**") at which the Bidding Procedures Order was approved; and the appearance of all interested parties and all responses and objections to the Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing, including the declarations of the Debtor's Chief Executive Officer, Erika Badan [Docket No. 196], and Samuel McCartney of Core Advisors LLC [Docket No. 197]; and upon all of the proceedings held before this Court; and all objections and responses to the relief requested in the Motion having been heard and overruled, withdrawn, or resolved on the

terms set forth in this Order; and it appearing that due notice of the Motion, the Sale Hearing, the

Asset Purchase Agreement, the purchase and sale of the Purchased Assets (as defined in the Asset

Purchased Agreement) pursuant to the terms of the Asset Purchase Agreement (as defined below)

(the "**Transaction**"), and the Bidding Procedures Order has been provided; and it appearing that

the relief requested in the Motion is in the best interests of the Debtor, its estate, its stakeholders,

and all other parties in interest; and it appearing that this Court has jurisdiction over this matter;

and it further appearing that the legal and factual bases set forth in the Motion and at the Sale

Hearing establish just cause for the relief granted herein; and after due deliberation thereon, it is

hereby:

**FOUND AND CONCLUDED THAT**:[3]

### Findings of Fact, Conclusions of Law, Jurisdiction, Venue, and Final Order

A.      The findings and conclusions set forth herein constitute this Court's findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this chapter 11 case

pursuant to Bankruptcy Rule 9014.

B.      To the extent that any of the following findings of fact constitute conclusions of

law, they are adopted as such.  To the extent any of the following conclusions of law constitute

findings of fact, they are adopted as such.

C.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order.  This is a core proceeding under 28 U.S.C. § 157(b) and this

Court may enter a final order consistent with Article III of the United States Constitution.  Venue

of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3]    All findings of fact and conclusions of law announced by this Court at the Sale Hearing in relation to the Motion are hereby incorporated to the extent not inconsistent herewith.

33990898.4

D.       This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of this Order as set forth herein which shall not be subject to any stay.

### Notice of the Transaction, Asset Purchase Agreement, Sale Hearing, Bid Deadline, and Cure Amounts

E.       As evidenced by the affidavits or declarations of service previously filed with this Court, *see* Docket Nos. 24, 50, 88, 133, 138, 158 & 195, proper, timely, adequate, and sufficient notice of the Motion, the Bid Deadline (as defined below), the Sale Hearing, the Asset Purchase Agreement, and the Transaction has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.  The Debtor has complied with all obligations to provide notice of the Motion, the Bid Deadline, the Sale Hearing, the Asset Purchase Agreement, and the Transaction as required by the Bidding Procedures Order. The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bid Deadline, the Sale Hearing, the Asset Purchase Agreement (as defined below), or the Transaction is required for the entry of this Order.

F.       A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

G.       In accordance with the Bidding Procedures Order, and as evidenced by the affidavits or declarations of service and publication previously filed with this Court [Docket Nos. 138, 185 & 189], the Debtor has filed and served the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale*

[Docket No. 85] on January 13, 2026 (as amended [Docket No. 165] and supplemented [Docket No. 180], the "**Cure Notice**") regarding the potential assumption and assignment of certain executory contracts and unexpired leases and of the amount necessary to cure any defaults pursuant to section 365(b) of the Bankruptcy Code (all such amounts in connection with such executory contracts and unexpired leases, (the "**Cure Amounts**") upon the non-Debtor counterparties thereto.  The service of the Cure Notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned pursuant to the Asset Purchase Agreement (the "**Assigned Contracts**"), including with respect to adequate assurance of future performance or establishing a Cure Amount for the respective Assigned Contracts.  All non-Debtor counterparties to each Assigned Contract set forth in the Cure Notice have had an adequate opportunity to object to assumption and assignment of the applicable Assigned Contract and the Cure Amount set forth in the Cure Notice, and including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Buyer for purposes of section 365(c)(1) of the Bankruptcy Code.  The deadline to file an objection to the assumption and assignment to the Buyer of any Assigned Contract (a "**Contract Objection**") has expired, other than with respect to the contracts listed in the supplemental Cure Notice [Docket No. 180] (the "**Supplemental Cure Notice**"), and to the extent any such entity timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn or overruled.  To the extent that any such party did not timely file a Contract Objection by the Contract Objection deadline, such party shall be deemed to have consented to (i) the assumption and assignment of

the Assigned Contract, and (ii) the proposed Cure Amount set forth on the Cure Notice.  None of

the contracts listed in the Supplemental Cure Notice are Assigned Contracts.

### The Troy-CSL Lighting, Inc. Bid

H.    On February 6, 2026, the Buyer and the Debtor entered into the Asset Purchase

Agreement, which provided for a purchase price of $2.2 million for the Purchased Assets, plus the

assumption of the Assumed Liabilities as set forth in the Asset Purchase Agreement (collectively,

the "**Troy-CSL Bid**").

I.    As provided in the Bidding Procedures, the Troy-CSL Bid, constitutes a Qualified

Bid (as defined in the Bidding Procedures).

### Highest or Otherwise Best Offer

J.    As demonstrated by the evidence proffered or adduced at the Sale Hearing and the

representations of counsel made on the record at the Sale Hearing, the Debtor has complied in all

respects with the Bidding Procedures Order.  The sale was duly noticed and conducted in a

non-collusive, fair, and good faith manner and the process set forth in the Bidding Procedures

Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or

otherwise better offer to purchase the Purchased Assets and assume the Assumed Liabilities.  The

bid deadline was February 3, 2026 at 4:00 p.m. (Prevailing Eastern Time) (the "**Bid Deadline**").

K.    The Purchased Assets were adequately marketed by the Debtor and its advisors,

and the consideration provided by the Buyer under the Asset Purchase Agreement constitutes the

highest and best offer and provides fair and reasonable consideration to the Debtor for the

Purchased Assets and the assumption of the Assumed Liabilities.  The Troy-CSL Bid presents the

best opportunity to maximize and realize the value of the Purchased Assets for the benefit of the

Debtor, its estate, and its creditors.  The Debtor's determination that the consideration provided by

the Buyer under the Transaction constitutes the highest and best offer for the Purchased Assets is a valid and sound exercise of the Debtor's business judgment.

L.    Approval of the Motion and the Asset Purchase Agreement, and the consummation of the Transaction contemplated thereby, is in the best interests of the Debtor, its creditors, its estate, and other parties in interest.  The Debtor has demonstrated good, sufficient, and sound business reasons and justifications for entering into the Transaction and the performance of its obligations under the Asset Purchase Agreement.

M.    Entry of this Order approving the Asset Purchase Agreement, and all of the provisions thereof, is a condition precedent to the Buyer's consummation of the Transaction.

N.    The Asset Purchase Agreement was not entered into, and neither the Debtor nor the Buyer has entered into the Asset Purchase Agreement, or proposes to consummate the Transaction, for the purpose of hindering, delaying, or defrauding the Debtor's present or future creditors. Neither the Debtor nor the Buyer is entering into the Asset Purchase Agreement, or proposing to consummate the Transaction, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

O.    The terms and conditions set forth in the Asset Purchase Agreement, including the form and total consideration to be realized by the Debtor pursuant to the Asset Purchase Agreement:  (i) are in the best interests of the Debtor's creditors and estate; and (ii) constitute fair value, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Purchased Assets.

P.      As part of the consideration for the Purchased Assets, the Buyer will assume certain Assumed Liabilities.  The Buyer's agreement to assume the Assumed Liabilities is essential to provide for the payment of other liabilities that would potentially not be satisfied absent consummation of the Transaction.

Q.      The Buyer is the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures Order.  The Buyer has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the Asset Purchase Agreement, and the sale and the Asset Purchase Agreement likewise comply with the Bidding Procedures Order and any other applicable order of this Court.

### Good Faith of the Debtor and the Buyer

R.      The sale process conducted by the Debtor, including, without limitation, the Bidding Procedures set forth in the Bidding Procedures Order, was at arm's length, non-collusive, and in good faith.

S.      The Debtor, the Buyer, and their respective professionals and advisors have complied in good faith with the Bidding Procedures Order in all respects.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and evidence adduced and representations proffered by counsel at the Bidding Procedures Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order, the Debtor (a) afforded all creditors and other parties in interest and all potential Buyers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Purchased Assets; (b) provided potential Buyers, upon request, sufficient

33990898.4

information to enable them to make an informed judgment on whether to bid on the Assets; and (c) considered any bids submitted on or before the Bid Deadline.

T.      The Asset Purchase Agreement and the Transaction contemplated thereunder were proposed, negotiated, and entered into by and among the Debtor and the Buyer without collusion, in good faith, and at arm's length.

U.      Neither the Buyer nor any of its Affiliates, present or contemplated members, officers, directors or shareholders is an "insider" of the Debtor, as the term "insider" is defined in section 101(31) of the Bankruptcy Code.  The Buyer is entering into the Transaction in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this chapter 11 case and the Transaction.  Neither the Debtor, the Buyer nor any Affiliate of either have engaged in any action or inaction that would cause or permit the Asset Purchase Agreement or the Transaction to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.

### The Requirements of Section 363 Are Satisfied

V.      The Debtor has demonstrated a sufficient basis and compelling circumstances requiring the Debtor to (i) enter into the Asset Purchase Agreement; (ii) sell the Purchased Assets; and (iii) assume and assign the Assigned Contracts, and such actions are appropriate exercises of the Debtor's business judgment and in the best interests of the Debtor, its estate, and its creditors. Such business reasons include, without limitation, the fact that: (i) the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Asset Purchase Agreement present the best opportunity to maximize and realize the value of the Purchased Assets for the benefit of the Debtor, its estate, and its creditors; and (iii) unless the sale is concluded

expeditiously, the recoveries of the Debtor's estate and its constituencies are likely to be adversely affected and there is a significant risk that a significant amount of liabilities that will be assumed by the Buyer under the Asset Purchase Agreement will not be satisfied.

W.    The Asset Purchase Agreement is a valid and binding contract between the Debtor and the Buyer and shall be enforceable pursuant to their terms.

X.    The Purchased Assets constitute property of the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtor's estate.

Y.    The sale of all Purchased Assets to the Buyer under the terms of the Asset Purchase Agreement satisfies the applicable provisions of section 363(f) of the Bankruptcy Code, and except as expressly provided in the Asset Purchase Agreement and as otherwise set forth in this Order with respect to the Assumed Liabilities and Permitted Encumbrances, if any, (i) the transfer of the Purchased Assets to the Buyer and (ii) the assumption or assignment to the Buyer or an Affiliate of the Buyer of the Assigned Contracts and the Assumed Liabilities, in each case, will be free and clear of all Claims[4] and Liens (as defined below) and will not subject the Buyer, any Affiliates of Buyer or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Purchased Assets), to any liability for any Claims or Liens whatsoever (including, without limitation, under any theory of equitable law, antitrust, setoff (except with respect to setoffs that were effected prior to the Petition Date), or successor or transferee liability).

Z.    The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Transaction, thus adversely affecting the Debtor, its estate, its creditors, its

---

[4]    "**Claim**" shall mean a "claim" as defined in section 101 of the Bankruptcy Code.

employees, and other parties in interest, if the sale of the Purchased Assets was not free and clear of all Claims and Liens or if the Buyer would be liable for any Claims or Liens, including, without limitation and as applicable, certain liabilities that expressly are not assumed by the Buyer as set forth in the Asset Purchase Agreement or in this Order. The Buyer asserts that it will not consummate the Transaction unless the Asset Purchase Agreement specifically provides, and this Court specifically orders, that the Buyer, its property, its successors or assigns and their property, and the Purchased Assets will not have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Claim or Lien, or any successor or transferee liability for the Debtor, in each case, other than the Assumed Liabilities and any Permitted Encumbrances.

AA.    The transfer of the Purchased Assets to the Buyer under the Asset Purchase Agreement is a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Purchased Assets free and clear of all Claims and Liens (except as provided in the Asset Purchase Agreement, solely with respect to Assumed Liabilities and any Permitted Encumbrances). The Debtor may sell its interests in the Purchased Assets free and clear of all Claims and Liens because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. The transfer of the Purchased Assets to the Buyer will vest the Buyer with good and marketable title to the Purchased Assets free and clear of all Claims and Liens (except as provided in the Asset Purchase Agreement, solely with respect to Assumed Liabilities and any Permitted Encumbrances).

BB.    The Buyer is not deemed to be a successor to the Debtor or its estate by reason of any theory of law or equity, and the Buyer shall not assume or in any way be responsible for any liability or obligation of any of the Debtor or its estate by reason thereof. The Buyer is not deemed

to be a continuation or substantial continuation of the Debtor or its estate, and there is no continuity between the Buyer and the Debtor.  The Buyer does not have a common identity of incorporators, directors, or equity holders with the Debtor.  The Buyer is not holding itself out to the public as a continuation of the Debtor or its estate, and the Transaction does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtor.

CC.    There is no legal or equitable reason to delay the Transaction.  The Transaction must be approved and consummated promptly to preserve and maximize the value of the Debtor's Assets.

DD.    The Debtor has demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Transaction pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the immediate consummation of the Transaction, the value of the Purchased Assets will be harmed.  To maximize the value of the Purchased Assets, it is essential that the Transaction occur within the timeframe set forth in the Asset Purchase Agreement.  Time is of the essence in consummating the Transaction.  Accordingly, there is good cause to waive the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d).

EE.    The sale and assignment of the Purchased Assets outside of a chapter 11 plan pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan for the Debtor.  Neither the Asset Purchase Agreement nor the Transaction contemplated thereby constitutes a *sub rosa* chapter 11 plan.

## Assumption and Assignment of the Assigned Contracts

FF.     The assumption and assignment of the Assigned Contracts (as such Assigned Contracts may be amended, supplemented, or otherwise modified as provided in the Asset Purchase Agreement) that are designated for assumption and assignment pursuant to the terms of this Order, the Bidding Procedures Order and the Asset Purchase Agreement is integral to the Asset Purchase Agreement, is in the best interests of the Debtor and its estate, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.

GG.     The Debtor has met all requirements of section 365(b) of the Bankruptcy Code for each of the Assigned Contracts.  The Debtor will have (i) cured or provided adequate assurance of cure of any default existing prior to the consummation of the Transaction contemplated by the Asset Purchase Agreement (the "**Closing**") under all of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any counterparty to an Assigned Contract for actual pecuniary loss to such entity resulting from a default prior to the Closing under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  The assignment of each of the Assigned Contracts is free and clear of all Claims and Liens, except as expressly permitted in the Asset Purchase Agreement and this Order.

HH.     The Buyer has demonstrated adequate assurance of future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Assigned Contracts to be assumed and assigned under the Asset Purchase Agreement shall be assigned and transferred to the Buyer (in accordance with the timing specified in section 2.09 of the Asset Purchase

Agreement), and remain in full force and effect for the benefit of the Buyer, notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

II.     No defaults exist in the Debtor's performance under the Assigned Contracts as of the date of this Order other than the failure to pay amounts equal to the Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

### IT IS HEREBY ORDERED THAT:

### General Provisions

1.     The Motion is granted and approved as set forth herein.  The Debtor is authorized to (a) sell the Purchased Assets to the Buyer and (b) transfer, assign, and convey the Purchased Assets, including the Assigned Contracts to the Buyer, in each case in accordance with the Asset Purchase Agreement.

2.     All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court at the Sale Hearing, or by stipulation filed with this Court, or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.  All non-Debtor counterparties to the Assigned Contracts given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.  All holders of Claims or Liens who did not object, or withdrew their objections to the Transaction, are deemed to have consented to the Transaction pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of Claims or Liens are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code; *provided*, *however*, that setoff rights will be extinguished as to the Purchased Assets and the Buyer to the extent there is no longer mutuality after the consummation of the Transaction, except with respect to setoffs that were validly effected prior to the Petition Date; *provided further*, that, the right of any party to seek

satisfaction of a setoff claim from the proceeds of the Transaction shall be preserved, and the defenses and counterclaims of the Debtor and other parties in interest shall likewise be preserved.

### Approval of the Asset Purchase Agreement

3.     The Debtor is authorized to enter into the Asset Purchase Agreement.  The failure specifically to include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent that the Debtor is authorized to enter into the Asset Purchase Agreement in its entirety.  The transfer of the Purchased Assets by the Debtor to the Buyer shall be a legal, valid, and effective transfer of the Purchased Assets.  The consummation of the Transaction is hereby approved and authorized under section 363(b) of the Bankruptcy Code.  The automatic stay pursuant to section 362 of the Bankruptcy Code, to the extent applicable, is hereby modified to allow the Buyer to enforce its rights pursuant to the Asset Purchase Agreement.

4.     The Debtor is authorized to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Transaction, including the sale to the Buyer of the Purchased Assets, in accordance with the terms and conditions set forth in the Asset Purchase Agreement and this Order, including, without limitation, executing, acknowledging, and delivering such deeds, assignments, conveyances, and other assurance, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and confirming to the Buyer, or reducing to possession, any or all of the Purchased Assets, and entering into any other agreements related to implementing the Transaction, and (b) to assume and assign all Assigned Contracts to the Buyer in accordance with the timing set forth in section 2.09 of the Asset Purchase Agreement.

5.      The Debtor is further authorized to pay, without further order of this Court, whether before, at or after the Closing, any expenses or costs that are required to be paid in order to consummate the Transaction or perform its obligations under the Asset Purchase Agreement; *provided* that the foregoing shall not authorize the payment of professional fees and expenses that otherwise would be subject to Court approval.

6.      All persons and entities are prohibited from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtor to transfer the Purchased Assets to the Buyer in accordance with the Asset Purchase Agreement and this Order; *provided* that the foregoing shall not prohibit any person or entity from appealing this Order or seeking a stay pending such an appeal.

### Sale and Transfer Free and Clear of Claims and Liens

7.      Except as otherwise expressly provided in the Asset Purchase Agreement and the terms of this Order solely with respect to Assumed Liabilities and Permitted Encumbrances, if any, the Purchased Assets shall be sold to the Buyer free and clear of all Claims (as defined and used in the Bankruptcy Code, including section 101(5) thereof), liabilities, interests, rights, and encumbrances, including, without limitation, any escheat claims or obligations of the Debtor arising prior to the Closing, rights of setoff (except with respect to setoffs that were validly effected prior to the Petition Date), and all other matters of any kind and nature, whether known or unknown, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, whether arising prior to or subsequent to the commencement of this chapter 11 case (but, for the avoidance of doubt, in each case arising from the ownership or the operation of the Purchased Assets prior to the date of the Closing (the "**Closing Date**")), and any consensual or nonconsensual lien, statutory lien, real or personal property lien, mechanics' lien, materialmans' lien,

warehousemans' lien, tax lien, and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof (all of the foregoing, collectively, "**Liens**"). For the avoidance of any doubt, the Claims and Liens on those assets of the Debtor not subject to the sale to the Buyer pursuant to the Asset Purchase Agreement, if any (or pursuant to any other order of this Court approving the sale of any of the Debtor's other assets free and clear of Claims and Liens) shall remain with the same validity, force, priority, and effect on those other assets. All Liens, Claims, and interests from which the Purchased Assets are sold free and clear shall attach to the proceeds of the sale of the Purchased Assets to be received by the Debtor in the same order and priority that such Liens, Claims, and interests had prior to the Closing.

8.      All of the Debtor's rights, title, and interest in and to, and possession of, the Purchased Assets shall be immediately vested in the Buyer as set forth in the Asset Purchase Agreement, pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code free and clear of any and all Claims and Liens except for Assumed Liabilities and Permitted Encumbrances. Such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets to Buyer. All persons or entities, presently, or on or after the Closing, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets directly to the Buyer or its designees on the Closing Date or at such time thereafter as the Buyer may request. Notwithstanding anything in this Order, with respect to any Purchased Assets, for which legal title remains with the Debtor after Closing pursuant to the Asset Purchase Agreement, such Purchased Assets shall be held in trust for the benefit of Buyer and shall not be considered property of the Debtor's estate within the meaning of section 541 of the Bankruptcy Code.

9.      The Buyer is hereby authorized, in connection with the consummation of the Transaction, to allocate the Purchased Assets, Assumed Liabilities, Permitted Encumbrances, if

any, and the Assigned Contracts among its Affiliates, designees, assignees, or successors in a manner consistent with the Asset Purchase Agreement, and the Debtor shall cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing.

10.    This Order: (i) shall be effective as a determination that as of the Closing, (a) no Claims or Liens (other than Assumed Liabilities and Permitted Encumbrances, if any) will be capable of being asserted against the Buyer, any Affiliates of Buyer or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Purchased Assets), (b) the Purchased Assets shall have been transferred to the Buyer free and clear of all Claims and Liens except for Assumed Liabilities and Permitted Encumbrances, if any, and as provided for in the Asset Purchase Agreement, and (c) the conveyances described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.  The Purchased Assets are sold free and clear of any reclamation rights as defined by the Uniform Commercial Code and analogous state law.

33990898.4

11.     Except as otherwise expressly provided in the Asset Purchase Agreement and with respect to the Assumed Liabilities and Permitted Encumbrances, if any, all persons and entities (and their respective successors and assigns), including, without limitation, all debt security holders, equity security holders, Affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Claims or Liens arising under or out of, in connection with, or in any way relating to, the Debtor, the Purchased Assets, the ownership, sale, or operation of the Purchased Assets prior to Closing or the transfer of the Purchased Assets to the Buyer are hereby forever barred and estopped from asserting such Claims or Liens against the Buyer, any Affiliates of Buyer or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Purchased Assets).  Following the Closing, no holder of any Claim or Lien shall interfere with the Buyer's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim or Lien, or based on any action the Debtor may take in this chapter 11 case.

12.     If any person or entity that has filed financing statements, mortgages, *lis pendens* or other documents or agreements evidencing Claims or Liens against or in the Purchased Assets shall not have delivered to the Debtor prior to the Closing of the Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims and Liens that the person or entity has with respect to the Purchased Assets or otherwise, then only with regard to the Purchased Assets that are purchased by the Buyer pursuant to the Asset Purchase Agreement and this Order: (i) the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets; (ii) the Buyer is hereby authorized to

33990898.4

file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims and Liens against the Buyer and the applicable Purchased Assets; and (iii) the Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Claims and Liens with respect to the Purchased Assets other than Assumed Liabilities and Permitted Encumbrances, if any.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Claims and Liens shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

13.    To the maximum extent permitted by applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "**Licenses**") of the Debtor with respect to the Purchased Assets, and all Licenses are deemed to have been, and hereby are directed to be, transferred to the Buyer pursuant to the Asset Purchase Agreement.  To the extent any Licenses cannot be transferred to the Buyer in accordance with the previous sentence, such Licenses: (i) shall be in effect while the Buyer, with assistance from the Debtor, works promptly and diligently to apply for and secure all necessary government approvals for the transfer or issuance of new Licenses to the Buyer; and (ii) shall terminate on a license-by-license basis following transfer or issuance of a new License to the Buyer.  To the extent required under the Asset Purchase Agreement, the Debtor shall maintain

33990898.4

the Licenses in good standing to the fullest extent allowed by applicable law for the Buyer's benefit until equivalent new Licenses are issued to the Buyer.

14.     Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as owner or operator of property sold or transferred pursuant to this Order after the occurrence of the Closing Date (with respect to such property), *provided, however*, that the foregoing shall not limit, diminish or otherwise alter the Debtor's or the Buyer's defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to any liability that may exist to a governmental unit at such owned or operated property.  Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (ii) registration, (iv) authorization, or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  To the extent provided by section 525 of the Bankruptcy Code, a governmental unit may not deny, revoke, suspend, or refuse to renew any permit, license, or similar grant to a person that is or has been a bankrupt or a debtor under the Bankruptcy Code, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a bankrupt or debtor under the Bankruptcy Code, has been insolvent before the commencement of the case under the Bankruptcy Code, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under the Bankruptcy Code or that was discharged under the Bankruptcy Code.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order, subject to the Debtor's

33990898.4

and the Buyer's rights to assert in that forum or before this Court that any such laws are not in fact police or regulatory law or that the matter should be heard by this Court.

15.     Unless otherwise provided herein or the Asset Purchase Agreement, all persons and entities that are in possession of some or all of the Purchased Assets as of the Closing Date are directed to surrender possession of such Purchased Assets to the Buyer on the Closing Date.

## No Successor or Transferee Liability

16.     Neither the Buyer, nor any Affiliate, successor, or assignee of the Buyer, shall be deemed, as a result of any action taken in connection with the Asset Purchase Agreement, the consummation of the Transaction contemplated by the Asset Purchase Agreement, or the transfer or operation of the Purchased Assets, including the Assigned Contracts, to: (i) be a legal successor, or otherwise be deemed a successor to the Debtor (other than, for the Buyer, with respect to the Assumed Liabilities to be paid after the Closing or any obligations as an assignee under the Assigned Contracts arising after the Closing); (ii) have, *de facto* or otherwise, merged with or into the Debtor; (iii) be an alter ego or a mere continuation or substantial continuation of the Debtor including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("**COBRA**"), the WARN Act (29 U.S.C. §§ 2101 et seq.) ("**WARN**"), the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* (the "**NLRA**"); or (iv) be liable for any environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic,

polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts, or obligations of or required to be paid by the Debtor for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), any escheat liabilities arising prior to the Closing, or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule, or regulation or doctrine.

17.    Other than as expressly set forth in the Asset Purchase Agreement solely with respect to Assumed Liabilities and Permitted Encumbrances, if any, neither the Buyer, nor any Affiliate, successor, or assignee of the Buyer shall have any responsibility for (i) any liability or other obligation of the Debtor or related to the Purchased Assets or (ii) any remaining Claims or Liens against the Debtor or any of its predecessors or Affiliates.  Other than as expressly set forth in the Asset Purchase Agreement solely with respect to Assumed Liabilities and Permitted Encumbrances, if any, neither the Buyer, nor any Affiliate, successor, or assignee of the Buyer, shall have any liability whatsoever with respect to the Debtor's (or its predecessors' or Affiliates') businesses or operations or any of the Debtor's (or its predecessors' or Affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, (i) liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing; (ii) liabilities or obligations under WARN; (iii) escheat liabilities arising prior to Closing; or (iv) liabilities or

obligations under CERCLA, or any foreign, federal, state, or local labor, employment, or environmental law whether of similar import or otherwise by virtue of the Buyer's purchase of the Purchased Assets or assumption of the Assumed Liabilities by the Buyer or an Affiliate of the Buyer (all liabilities described in paragraph 16 and paragraph 17 of this Order, "**Successor or Transferee Liability**").

18.     Except as otherwise expressly provided in this Order or the Asset Purchase Agreement, nothing shall require the Buyer to: (i) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement, or other agreements to which the Debtor is a party or has any responsibility therefor including, without limitation, medical, welfare, and pension benefits payable after retirement or other termination of employment; or (ii) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for making any contribution to, or in respect of the funding, investment, or administration of any employee benefit plan, arrangement, or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement, or agreement.

19.     Effective upon the Closing, except with respect to Assumed Liabilities and Permitted Encumbrances, if any, all persons and entities are forever prohibited from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer, any Affiliates of Buyer or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Purchased Assets), with respect to any (i) Claim or Lien or (ii) Successor or Transferee Liability, including, without limitation, the following actions with respect to clauses (i)

33990898.4

and (ii): (a) commencing or continuing any action or other proceeding pending or threatened; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Claim or Lien; (d) asserting any setoff (except with respect to setoffs that were effected prior to the Petition Date) or right of subrogation; or (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof.

### Good Faith of the Buyer

20.     The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.  The Transaction contemplated by the Asset Purchase Agreement is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transaction (including the assumption and assignment of the Assigned Contracts), unless such authorization and consummation of the sale are duly and properly stayed pending such appeal.

21.     Neither the Debtor, the Buyer nor any Affiliate of either the Debtor or the Buyer have engaged in any collusion with other bidders or other parties or have taken any other action or inaction that would cause or permit the Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code or otherwise.  The consideration provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and is not less than the value of such Purchased Assets, and the Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

22.     The Buyer is not an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

## Assumption and Assignment of Assigned Contracts

23.     To the extent that any entity did not timely file a Contract Objection by the Contract Objection deadline with respect to any Assigned Contract set forth on the Cure Notice, such entity shall forever be barred and estopped from objecting: (i) to the Cure Amount as the amount to cure all defaults to satisfy section 365 of the Bankruptcy Code and from asserting that any additional amounts are due or defaults exist; (ii) that any conditions to assumption and assignment must be satisfied under such Contract or Lease before it can be assumed and assigned or that any required consent to assignment has not been given; or (iii) that the Buyer has not provided adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code.

24.     The assumption and assignment of the Assigned Contracts is approved.  The Debtor is authorized and directed to assume and assign each of the Assigned Contracts to the Buyer or an Affiliate of the Buyer upon the Closing of the Transaction (or thereafter, in accordance with the Asset Purchase Agreement and this Order), free and clear of all Claims and Liens, other than Assumed Liabilities and Permitted Encumbrances, if any.  The payment of the applicable Cure Amounts by the Buyer, in accordance with the Asset Purchase Agreement and section 365(b) of the Bankruptcy Code, (i) cure all defaults under the Assigned Contracts as contemplated by section 365 of the Bankruptcy Code as of the Closing Date, (ii) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (iii) together with the assumption of the Assigned Contracts by the Debtor and the assignment of the Assigned Contracts to the Buyer or an Affiliate of the Buyer, constitute adequate assurance of future performance thereof.  The Cure Amounts and any payments made to the counterparties under the Assigned Contracts prior

33990898.4

to the assumption of the Assigned Contracts shall be deemed payments that were required to be made in full as part of the obligation to assume and assign the Assigned Contracts under this Sale Order and the Asset Purchase Agreement.

25. Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Amounts by the Buyer, the Assigned Contracts to be assumed and assigned under the Asset Purchase Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer. Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the counterparty to such Assigned Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to this Transaction. Subject to the payment of the applicable Cure Amounts by the Buyer, all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer or an Affiliate of the Buyer of the Assigned Contracts have been satisfied. Subject to taking assignment of the Assigned Contracts and payment of the applicable Cure Amounts by the Buyer, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtor under the Assigned Contracts, and such Assigned Contracts shall remain in full force and effect for the benefit of the Buyer. Subject to the payment of the applicable Cure Amounts by the Debtor or the Buyer, as applicable, each non-Debtor counterparty to the Assigned Contracts shall be forever barred and estopped from (i) asserting against the Debtor or the Buyer or their respective property any assignment fee, acceleration,

default, breach, claim, pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date or arising by reason of the Closing, including any breach related to or arising out of change-in-control in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts and (ii) asserting against the Buyer (or its assets, including the Purchased Assets) or its Affiliates, designees, assignees, or successors (or their assets), any Claim or Lien, counterclaim, breach, condition, setoff (except with respect to setoffs that were effected prior to the Petition Date) asserted or capable of being asserted against the Debtor existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and Permitted Encumbrances, if any.

26. Upon taking assignment of the Assigned Contracts and the payment of the relevant Cure Amounts, the Buyer shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts and the Debtor shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assigned Contracts. There shall be no assignment fees, increases, or any other fees charged to the Buyer or the Debtor as a result of the assumption and assignment of the Assigned Contracts. The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions or of the right of the Debtor or the Buyer, as the case may be, to enforce every term and condition of such Assigned Contract with respect to this Transaction. The validity of the assumption and assignment of any Assigned Contract to the Buyer shall not be affected by any existing dispute between the Debtor and any counterparty to such Assigned Contract.

27. The assignments of each of the Assigned Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code and shall be free and clear of all Claims and Liens pursuant to section 363(f) of the Bankruptcy Code.

33990898.4

**Back-Up Bid**

28.     SH Operations, LLC is designated as the Back-Up Bidder (as defined in the Bidding Procedures) and the bid submitted by the Back-Up Bidder (as defined in the Bidding Procedures) at the Auction is the Back-Up Bid.  Anything herein to the contrary notwithstanding, in the event that the Buyer fails to close the Sale by February 13, 2026 (or such date as may be extended by the Debtor in consultation with the Buyer and the Consultation Parties, and with agreement of the Back-Up Bidder), the Back-Up Bid will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Debtor shall promptly submit an order to approve the sale to the Back-Up Bidder in accordance with the Back-Up Bid.

**Resolution of Responses**

29.     Notwithstanding anything to the contrary in this Sale Order or in the Asset Purchase Agreement, the County of Multnomah, Oregon's liens, claims, interests, and other rights in and to that certain real property located at 2181 NW Nicolai St., Portland, OR are expressly preserved.

30.     Notwithstanding anything to the contrary in the Motion, the Asset Purchase Agreement, any lists of Assumed Contracts to be assumed and assigned and/or any notice of assumption and/or assignment, this Sale Order, or any documents relating to any of the foregoing: (a) nothing shall permit or otherwise effect a sale, an assignment or any other transfer of (i) any insurance policies that have been issued by ACE American Insurance Company, Great Northern Insurance Company, Illinois Union Insurance Company, Federal Insurance Company and/or each of their U.S.-based affiliates and successors (collectively, the "**Chubb Companies**") to or that provide coverage to the Debtor, and all agreements, documents or instruments relating thereto (collectively, the "**Chubb Insurance Contracts**"), and/or (ii) any rights, proceeds, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts to the Buyer;

(b) nothing shall alter, modify or otherwise amend the terms or conditions of the Chubb Insurance

Contracts; and (c) for the avoidance of doubt, the Buyer is not, and shall not be deemed to be, an

insured under any of the Chubb Insurance Contracts; *provided, however*, that to the extent any

claim with respect to the Purchased Assets arises that is covered by the Chubb Insurance Contracts,

the Buyer's right to receive the proceeds from such claim in accordance with the terms of the Asset

Purchase Agreement is fully preserved and the Debtor may pursue such claim in accordance with

the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Buyer any such

insurance proceeds (each, a "**Proceed Turnover**"), *provided*, *further*, *however*, that the Chubb

Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed

Turnover.

31.     Any assets, rights, intellectual property or other interests of Form Portfolios LLC

do not constitute Purchased Assets and are not being sold, transferred, or otherwise conveyed to

the Buyer pursuant to the Asset Purchase Agreement or this Order.

## Other Provisions

32.     This Order is binding upon and inures to the benefit of any successors and assigns

of the Debtor or the Buyer, including any trustee appointed in any subsequent case of the Debtor

under chapter 7 of the Bankruptcy Code.

33.     The provisions of this Order and the Asset Purchase Agreement are non-severable

and mutually dependent.

34.     The Asset Purchase Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto and in accordance

with the terms thereof, without further order of this Court, provided that any such modification,

amendment, or supplement does not have a material adverse effect on the Debtor's estate.

33990898.4

35.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including, without limitation, the Asset Purchase Agreement and the Transaction.

36.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order.  This Court retains jurisdiction to compel delivery of the Purchased Assets, to protect the Buyer (and its assets, including the Purchased Assets) and its Affiliates, designees, assignees, or successors (or their assets), against any Claims, Liens, and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363, or 365 of the Bankruptcy Code (or other applicable provisions) necessary to transfer the Purchased Assets and the Assigned Contracts to the Buyer.

37.     The requirements set forth in Bankruptcy Rules 6003(b), 6004, and 6006 have been satisfied or are otherwise hereby waived.

38.     As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d).  Time is of the essence in closing the sale and the Debtor and the Buyer intend to close the sale on or before February 13, 2026.

39.     This Order shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, the Debtor, any holders of Claims or Liens in, against, or on all or any portion of the Purchased Assets, all successors and assigns of the Buyer, the Debtor and its Affiliates and subsidiaries, and any subsequent trustees appointed in this chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection. Nothing contained in any chapter 11 plan confirmed in this chapter 11 case, any order confirming any such chapter 11 plan, or any order approving wind-down or dismissal of this chapter 11 case

33990898.4

or any subsequent chapter 7 case shall conflict with or derogate from the provisions of the Asset Purchase Agreement or this Order, and to the extent of any conflict or derogation between this Order or the Asset Purchase Agreement and such future plan or order, the terms of this Order and the Asset Purchase Agreement shall control.

40.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

41.    To the extent any provisions of this Order conflict with, or are otherwise inconsistent with, the terms and conditions of the Asset Purchase Agreement or the Bidding Procedures Order, this Order shall govern and control.

42.    The Debtor has all necessary authorizations to sell and is hereby permitted to sell to the Buyer all claims or causes of action of the Debtor against other parties arising out of events occurring prior to the Closing Date that constitute a Purchased Asset.  The Buyer may pursue any claim (i) that the Debtor may have that constitutes a Purchased Asset, or (ii) that the Buyer may have that arises out of or is related to the Purchased Assets purchased by the Buyer (notwithstanding the foregoing, the Buyer will not be able to assert rights specifically retained by the Debtor in the Asset Purchase Agreement).

Dated: February 11th, 2026
Wilmington, Delaware

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

33990898.4